IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELLIOTT EVANS, SR., | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 06-AR-0722-S |
| | } | |
| PEMCO AEROPLEX, INC., | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Pemco Aeroplex, Inc. ("Pemco"), for summary judgment on the above-entitled action brought by plaintiff, Elliott Evans Sr. ("Evans"). Evans claims that Pemco discriminated against him on the basis of his age and disability, alleging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"). For the reasons that follow, the court will grant Pemco's motion.

*Facts*[1]

Pemco is a company headquartered in Birmingham, Alabama that provides maintenance and repair services on commercial and military aircraft. Evans first began working for Pemco as a laborer in 1961, and is a member of the United Automobile and Aerospace

---

[1] The parties dispute some of the facts. For purposes of this memorandum opinion, the court will recite disputed facts in the light most favorable to Evans, the non-movant, giving him the benefit of every doubt.

Workers of America, Local No. 1155 ("the Union"). Currently seventy-three years old, Evans was born on February 26, 1934. On separate occasions during his employment with Pemco, managers Bobby Gardner and David Joiner, and hourly coworker Ricky Washington, asked Evans when he was going to retire.

Evans has worked primarily as a depainter during the forty-six years he has been at Pemco. As a depainter, Evans is required to remove coatings from aircraft by stripping paint off parts with industrial solvents. Evans has also worked in the landing-gear shop, and as a metal worker, sandblaster, fork-lift operator, and general helper. Although he is currently employed by Pemco and maintains his seniority status, Evans has been on a medical leave of absence since October 11, 2004.

Prior to October 2004, depainters were decentralized and assigned to work in specific areas throughout the facility. For 7 or 8 years prior to October 2004, Evans worked as a depainter in a backshop work area known as the "engine shop" cleaning small engine parts. During that time, Evans worked with Ricky Washington, another depainter who also was assigned to the engine shop. In September 2004, due to a decrease in its business, Pemco permanently laid off 46 employees — including 6 depainters — and reorganized some of its departments. Because he had enough seniority, Evans was not among the employees who were laid off in September 2004.

As part of the reorganization, Pemco consolidated all of the remaining depainters, including Evans and Washington, and transferred them to the wash-rack department.  Because there was not enough work to maintain a depainter in the engine shop on a full-time basis, the engine-shop depainter positions worked by Washington and Evans were part of that reorganization.  After they were transferred to the wash rack, the depainters were assigned work and supervised by Ken Brown ("Brown"), a first-level supervisor.  Brown, in turn, was supervised by Bobby Gardner ("Gardner"), the manager of back shops.  The depainters began each shift in the wash rack and their specific work assignments and locations would change on a daily basis depending on the need and work available on any given day.

After the September 2004 reorganization took effect, the essential functions of Evans's depainter job changed. Climbing and working at heights became essential functions of all the depainter positions, as the amount of floor work had declined significantly, and almost all depainting work requires climbing and working at heights on or in aircraft.  Although table or floor work occasionally is still required, and although there would be enough table and floor work to sustain one employee on a part-time basis, there is not enough of this work to keep a full-time depainter employed.  Pemco's work load has continued to decline since its reorganization in September 2004.

Evans is diabetic and has problems with his back. Due to his physical maladies, Evans has for many years had the following work restrictions: no climbing, no working at heights, no lifting more than 25 pounds, and no walking farther than 200 feet at any one time. On April 24, 1996, after Evans filed an EEOC charge against Pemco alleging race and disability discrimination, Evans and Pemco entered into a negotiated settlement agreement. In exchange for his promise not to file a lawsuit against it, Pemco agreed to "accommodate [Evans's] disability regarding climbing per his doctor's restrictions" and "to refrain from engaging in any retaliation or intimidation of [Evans] for having filed this [EEOC] charge." After his doctor issued the "no walking farther than 200 feet restriction," Pemco provided Evans with a three-wheel bike to use for transportation while at work.

On October 11, 2004, Evans arrived for his regular shift at the wash rack. After receiving a telephone call from an unidentified supervisor in an area of the facility called Bay II, Brown instructed Evans to report to that area. When Evans arrived at Bay II, despite the existence of the 1996 negotiated settlement agreement, the unnamed supervisor told him to climb onto the aircraft to remove paint. Evans informed the supervisor that he had work restrictions that prohibited him from climbing and working at heights. The supervisor then sent him to report back to Brown, and Brown sent him to the medical department. Based on the

information provided by Evans, the medical department determined that Evans could not perform the essential functions of the depainter job, and that there was no work available that fell within Evans's work restrictions. Pemco accordingly placed Evans on a medical leave of absence. Although he has not returned to work since October 11, 2004, Evans did not realize that he was being placed on a leave of absence.

Section 2 of Article V of the Collective Bargaining Agreement ("CBA") between Pemco and the Union provides:

> A leave of absence for sickness or accident (including Maternity) shall be granted to an employee without pay upon request for sixty (60) day periods, provided that the employee furnishes satisfactory proof of such disability to the Manager of Personnel or his/her designee. Such leave, however, shall not extend beyond the amount of the employee's length of continuous service with the Company at the time the leave of absence begins and in no event in excess of three (3) years. Length of continuous service shall accumulate during such leaves of absence. A break in the length of continuous service of an employee who has complied with the above conditions, and whose disability is of a temporary nature, may be subject to review under Article III [of the CBA], if the Union and the employee both request such action within five (5) days after the decision of the Manager of Personnel. An employee who is sent from the plant premises to the hospital by the Medical Department of First Aid on account of personal illness shall be placed on leave of absence for a period not to exceed two (2) weeks. An employee who is sent from the plant premises by the Medical Department or First Aid on account of personal illness and told to report back to the Medical Department on a specific date will be placed on leave of absence for such period of time. Any extension of such leave must be requested by employee and will be handled in accordance with this Section.

Although it does not appear to be specified in the text of the CBA,

Pemco's HR administrator, Elaine Cox ("Cox"), testified that pursuant to the CBA, union members can apply for and receive up to a maximum 52 weeks of sick and accident benefits, which are provided and administered by Prudential Financial ("Prudential"). Cox says that she informed Evans that he would be entitled to medical insurance benefits for up to three years if he was still on medical leave.  Evans understood from Cox that he would be entitled to both pay **and** benefits for up to three years, but he did not understand that he would be taking a formal leave of absence. After meeting with Cox, Evans filled out the application for disability benefits and submitted it directly to Prudential. Prudential approved Evans's application and paid him a weekly benefit of $230.00 for 52 weeks.  Before he started collecting this benefit, he earned $18.00 per hour, or approximately $900.00 per week.

The depainter work that Evans had been doing before he was placed on medical leave currently is being performed intermittently by employees Ricky Washington (DOB 6/16/57), Hilton Temple (DOB 5/31/1948), William Parker (DOB 8/4/1943), Eddie Waters (DOB 11/26/1945), Jerry Myers (11/4/1940), Rudolph Hart (6/21/1949), and Lurn Harrell (DOB 3/3/1933).  Although Pemco does not contend that these are the only employees who have filled in for Evans, Evans does not identify any other individuals who now perform the work that he previously performed.  Since October 11, 2004, Evans has

had no contact with Pemco supervisors or coworkers about going back to work.

Evans filed an EEOC charge on September 21, 2005. That charge states:

> I was hired by the above employer in November 1961 as a laborer. For the past eight years I have worked as a depainter. In October 2004, I was taken out of my position and transferred to the Wash Rack. I was sent from there to Bay II and told to climb a great heights. I informed the supervisor that I had medical restrictions because of my disability and could not climb those heights. Another supervisor sent me to personnel where I was told there to go home and informed that I would be paid $230.00 per week for three years. In August 2005, I received a letter from the insurance company requesting that I have some medical forms completed by my physician so that I could continue to receive temporary disability payments. I have never requested temporary disability and did not know that I was receiving it until I received this letter. The employer knew I had a disability for over 30 years and transferred me to a position I could not work knowing my medical restrictions. From November 2004 to present, September 21, 2005, the employer has refused to allow me to work even though I am capable of performing my former position. I was placed on leave by my employer without requesting it. A younger man, although a member of the protected age group, was given the position of depainter I formerly held.
>
> No reason has been offered for this action.
>
> I believe I am being discriminated against because of my disability, and my age, 71,
> in violation of the Americans with Disabilities Act of 1990, as amended and the Age Discrimination in Employment Act of 1967.

Evans filed this action against Pemco on April 11, 2006.

*Summary Judgment Standard*

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to

the nonmoving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The court may enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). The court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).  This determination involves applying substantive law to the substantive facts construed in favor of the non-movant.

*Discussion*

**I. Timeliness of Evans's Claims**

In his complaint, Evans asserts that Pemco "constructively and wrongfully terminated" him when it placed him on a leave of absence on October 11, 2004.  He filed his EEOC charge on September 21, 2005.  A plaintiff bringing an action against an employer for discrimination under the ADA or the ADEA must file a charge with the EEOC within 180 days of the allegedly unlawful employment practice.  *See Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (ADA); *Jones v. Dillard's, Inc.*, 331 F.3d 1259 (11th Cir. 2003) (ADEA).  Pemco contends that because Evans did not file his EEOC charge until 345 days after the date on which he says he was constructively discharged, the EEOC charge was

untimely and his ADA and ADEA claims must fail.

The court agrees with Pemco that, to the extent Evans claims he was constructively discharged on October 21, 2005, his EEOC charge was not timely filed.  However, Pemco disputes that Evans was discharged, whether "constructively" or otherwise, and it emphasizes that Evans remains a Pemco employee and maintains his seniority status.  Indeed, Evans stated in his EEOC charge that "**[f]rom November 2004 to present, September 21, 2005,** [Pemco] has refused to allow me to work even though I am capable of performing my former position" (emphasis added).  The court will not hold the inartful nature of the allegations in Evans's complaint against him.  Despite deposition testimony of Evans that might tend to contradict his EEOC charge, that charge, on its face, indicates that Evans believed he was being discriminated against as of the day he filed it.  Neither Evans's ADA claim nor his ADEA claim is barred by the 180-day rule.

**II. Evans's Age-Discrimination Claim**

Evans contends that Pemco discriminated against him because of his age.  In order to succeed under the ADEA, Evans must establish a *prima facie* case through direct, circumstantial, or statistical evidence.  *Early v. Champion Int'l Corp*, 907 F.2d 1077, 1081 (11th Cir. 1990).  He does not attempt to support his case using statistical evidence.  If Pemco is able to counter Evans's *prima facie* showing with a legitimate, non-discriminatory reason for the

9

employment action complained of, the burden shifts back to Evans to show that Pemco's stated reason was a pretext for unlawful age-based discrimination.  *Id.*

Direct evidence is "evidence which, if believed, would prove the existence of a fact in issue without inference or presumption." *Id.* (citaions omitted).  Attempting to head off positions that might be taken by Evans, Pemco argues that the statements of two supervisors and one hourly co-employee, in which these individuals asked Evans when he was going to retire, do not constitute direct evidence of discrimination.  Evans does not address this argument and accordingly abandons any opposition to it.  Even if Evans had attempted to argue that the statements constitute direct evidence of discrimination, the court would find that the statements cannot evince improper motive on behalf of Pemco.  Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence.  *Clark v. Coats and Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993).  Innocuous questions about retirement do not rise to the level of direct evidence sufficient to support a claim for age discrimination. Moreover, although two of the individuals who made the statements held management positions, there is no evidence that either of them had the authority to fire subordinate employees or to place employees on extended leaves of absence.

Evans can also establish a *prima face* case of age

discrimination with circumstantial evidence under the familiar *McDonnell Douglas* framework. Under that approach, Evans must show that (i) at the time of the employment action, he was a member of the class protected by the ADEA ("individuals who are at least 40 years of age," 29 U.S.C. § 631(a)), (ii) he was otherwise qualified for the position, (iii) he was subjected to an adverse employment action, and (iv) defendant replaced him with a persons who is not a member of the protected class. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152 (2000). Pemco admits that Evans can establish the first of the above elements. The third element presents a question of fact that the court cannot resolve at this juncture. While it is true that Evans's claim that he was constructively discharged on October 11, 2004 is untimely because his EEOC charge was filed more than 180 days after this alleged employment action, Evans stated in his EEOC charge that Pemco was still refusing to permit him to come back to work as of the date he filed the charge. Pemco points to evidence which might suggest that Evans had been out of contact since October 11, 2004, so that it could not have "refused" to permit him to come back to work, but this presents a question of fact of the kind that must be decided by a jury.

Evans's age-discrimination claim nevertheless fails because he cannot provide the remaining two elements of his *prima facie* case. First, there is no evidence to show that Evans was qualified for

the depainter position.  Pemco's business substantially declined in the months leading to September 2004, and after its reorganization, there was not enough work to sustain a full-time employee with Evans's work restrictions.  Evans points to the testimony of co-employee Hilton Temple for the proposition that there was enough floor work available to keep him occupied on a full-time basis, but Temple's testimony does not support this conclusion.  Although Temple testified that there are certain days in which he is not required to do any climbing, and although there is "plenty of work" to do in the wash rack "when it's busy," he also testified that there is not enough work to support a full-time depainter in the engine shop and that he did not know whether there is enough depainter work in the wash rack to merit a full-time position.  Because all full-time depainters were required to climb occasionally, if not frequently, after Pemco's business began to substantially decline, and because Evans was unable to do any climbing because of his work restrictions, Evans was not qualified for the depainter position.

    Second, even if the court assumes that Evans was qualified, he cannot establish his *prima facie* case because he was not replaced with a person who is not a member of his protected class.  Of the eight employees who have intermittently replaced Evans since he was placed on medical leave (Hilton Temple, Ricky Washington, Hilton Temple, William Parker, Eddie Waters, Jerry Myers, Rudolph Hart,

and Lurn Harrell), the youngest, Washington, has a birth date of June 16, 1957. Washington was 47 years old on October 11, 2004, the date on which Evans alleges that Pemco began discriminating against him. Because all of the employees who have been performing Evans's work were at least 40 years of age as of October 11, 2004, Evans was not replaced with a person outside his protected class. Accordingly, Evans has not established his *prima facie* case of age discrimination, and Pemco is entitled to summary judgment on this claim.

## II. Evans's ADA Claim

The ADA provides that no employer shall discriminate against "a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination in violation of the ADA, a plaintiff must show that he (1) has a disability of which his employer had either actual or constructive knowledge; (2) is a qualified individual; and (3) was subjected to unlawful discrimination as a result of the disability. *Gordon v. E.L. Hamm & Assoc.*, 100 F.3d 907, 910 (11th Cir. 1996). If a plaintiff fails to establish this *prima facie* case, the employer is entitled to a judgment as a matter of law. *Id.* at 915.

Pemco first argues that Evans is not "disabled" under the ADA. In *Gordon*, the Eleventh Circuit explained:

> In the ADA, Congress has defined "disability" as a (1) physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(2). An individual is deemed to be "disabled" for purposes of the ADA if he satisfies any one of these three enumerated definitions. A physical impairment, standing alone, however, is not necessarily a disability as contemplated by the ADA. The ADA requires that the impairment substantially limit one or more of the individual's major life activities.

*Id.* at 911 (citations and footnote omitted). In support of its contention that Evans is not disabled, Pemco points to Evans's deposition testimony in which he indicated that he would still be able to perform his old job in the engine shop if it were now available, and that he is able to take care of his personal hygiene, brush his teeth, shave, clothe himself, care for himself, hear, speak, read, breathe, test his blood sugar levels, administer insulin shots to himself, sit, stand, walk, lift 25 pounds, sleep, eat, shop for groceries, ride a three-wheel bike, drive a car, climb steps, and drive a forklift. Evans testified that his only disabilities are those related to his diabetes and his back problems, and that his only limitations are the work restrictions recognized in the earlier purported settlement agreement. The court agrees with Pemco that, particularly in light of this testimony, Evans's back problems and diabetes alone do not amount to a physical or mental impairment that **substantially** limits one or more of his **major life activities** such as such as caring for himself, performing manual tasks, walking, seeing, hearing,

speaking, breathing, learning, and working. *See* 29 C.F.R. § 1630.2(i) (defining "major life activities"). Moreover, there is no evidence that Evans has a record of such an impairment.

Notwithstanding the foregoing, the ADA provides as a third, nuanced definition of a "disabled" person, one who is **regarded** as having an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2). The EEOC regulations define one who is "regarded as having such an impairment" as an individual who (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by his employer as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has no illness or malady defined by the EEOC as a physical or mental impairment but is treated by her employer as having a substantially limiting impairment. *Gordon*, 100 F.3d at 912-13. Evans argues that he was regarded as having a physical impairment that qualifies under the ADA. Based on the existence of the 1996 negotiated settlement agreement between Evans and Pemco, the court agrees. In the 1996 agreement, to which it assented in order to settle a dispute, Pemco promised to "accommodate [Evans's] disability regarding climbing per his doctor's restrictions." Pemco denies that this agreement was ever executed by it, but whether or not it agreed to the terms of the settlement is a

15

disputed fact that the court must resolve in Evans's favor at the Rule 56 stage. Although Evans's argument that he is "disabled" under the ADA may be thin, it has enough merit to overcome Pemco's summary-judgment motion on this issue.

Pemco next argues that Evans's ADA claim fails because he has no evidence that he was subjected to unlawful discrimination as a result of his purported disability. As the court previously discussed, Pemco's alleged refusal to permit Evans to return to work arguably is an adverse employment action that would constitute unlawful discrimination. *See supra* p. 13. This presents another question of fact that must be resolved by a jury.

Finally, Pemco argues that Evans has not established his *prima facie* case because he is not a "qualified individual with a disability." A "qualified individual" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Gordon*, 100 F.3d at 911 (citing 42 U.S.C. § 12111(8)). The employment position that Evans now holds is that of a depainter. Pemco has provided ample evidence that its business was on the decline during the months leading to September 2004 has steadily declined since that time, and that no matter what reasonable measures it takes to accommodate Evans's purported disability, there simply is not enough work to support a full-time depainter with Evans's work restrictions. Evans has not

countered with any evidence to show that Pemco has enough consistent full-time work, in any position which Evans is qualified to perform, that categorically excludes all forms of climbing on aircraft. Alternatively, Evans has no evidence to discredit Pemco's proffered nondiscriminatory reason for placing him on medical leave, namely, that there was and is not enough floor and table work for Evans to perform on a full-time basis. Pemco is, after all, a company that does business by performing maintenance and repairs on large airplanes. Pemco's motion for summary judgment on Evans's ADA claim therefore must be granted.

*Conclusion*

Although it may be an unfortunate reality, Evans must accept that even the healthiest companies occasionally fall on hard times and lack the amount of business necessary to support a workforce under the same conditions as in years past. The court has been furnished with no evidence to suggest that this is not the sole reason that Evans was placed on a leave of absence. It certainly is a legitimate, nondiscriminatory reason. Unless his status has changed since Pemco filed its motion for summary judgment, Evans technically remains a Pemco employee. It may be wishful thinking by the court, but if the situation at Pemco or with Evans's health should improve, there is nothing to prevent Evans and Pemco from creating an arrangement wherein Evans would return and perform non-climbing work on at least a part-time basis. Because Pemco's

motion for summary judgment will be granted, such an arrangement, if it should become feasible, will have to made without the assistance of the court.

DONE this 12th day of July, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE